UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **LAMARR WHITAKER,** | § § § | |
| *Plaintiff*, | § | CIVIL ACTION NO. |
| v. | § § | |
| **THE MICHAELS STORES, INC** | § | 3:24-cv-00652-E |
| *Defendant.* | § § § | |

**PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND**

COMES NOW, Lamarr Whitaker ("Plaintiff" or "Whitaker"), and files this Amended Complaint and Jury Demand and would respectfully show the following:

**I. PARTIES**

1. Whitaker is citizen of the United States and a resident of Dallas, Texas.

2. Whitaker is a former Manager Physical Inventory Accounting for The Michaels Stores, Inc. Venue is proper because Whitaker was subjected to unlawful employment practices committed at Michaels' principal place of business in the State of Texas, Northern District, Dallas Division.

3. Defendant, The Michaels Stores, Inc., ("Defendant" or "Michaels") is a retailer of arts, crafts and décor, with its principal office in Irving, Dallas County, Texas. Michaels may be served by service on its registered agent: Corporation Services Company d/b/a CSC-Lawyers Incorporating Services Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

**II. JURISDICTION**

4. Jurisdiction of this Court is based on 26 U.S.C. § 7623(d) the Taxpayer First Act, which creates a private cause of action for employees who experience retaliation for engaging in protected

Plaintiff's Amended Complaint and Jury Demand – Page

activity.

5. Whitaker originally filed this matter with OSHA, Department of Labor, Dallas, Texas, on or about August 25, 2023. The complaint was pending appeal at the time of the original complaint but was dismissed once this Court gained jurisdiction, Case Number Case No. 301022334. This matter was pending more than 180 days with the Secretary of Labor and the delay was not due to bad faith of Whitaker, and he therefore brings this action for de novo review.

### III. FACTS

6. Whitaker was hired by Michaels on June 13, 2022, as a Manager Physical Inventory Accounting. Whitaker received no written discipline, prior to engaging in protected activity. Whitaker received a "Meets Expectations" performance rating and an increase in pay on April 13, 2023. Whitaker reported to Sharron Carr ("Carr"), Director of Accounts Payable, Accounts Receivable and Physical Inventory Accounting.

7. On January 25, 2023, Plaintiff met with Carr to discuss concerns he had about the accuracy of Michaels' inventory and accounting practices. Following the meeting, Plaintiff sent Carr a brief PowerPoint presentation titled "█████████████." The presentation provided the following objective, "█████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████."

8. Plaintiff further reported:

   ███████████████████████████████████████
   ███████████████████████████████████████
   ███████████████████████████████████████
   ███████████████████████████████████████

Plaintiff's Amended Complaint and Jury Demand – Page

- ███████████████████████████████████████████████████

9. On January 27, 2023, Plaintiff provided Carr with evidence that Michaels was not counting all of their inventory locations twice a year as required by ████████████████

10. On March 2, 2023, Plaintiff questioned Scott Wadsworth ("Wadsworth") Vice President of Distribution Center Operations and Chris Ortega ("Ortega") Director of Loss Prevention regarding his concerns that Michales was not working to timely address inventory issues at its distribution centers ("DC").  Plaintiff explained to Wadsworth and Ortega, "We've experienced ████████████████████████████████████████ ███ I've confirmed this approval are not being trailed back and matched to unknown diverts. ████████████████████████████████████████████████ ████." In other words, Michaels retroactively added the ███████████████████ ████████████████████████████████ potentially resulting in increased inventory and inflated financial reports for Michales' stores.

11. Sharon Carr and Mark Hibbs ("Hibbs"), Vice President of Loss Prevention, were copied on Plaintiff's reported concerns. On March 3, Wadsworth complained to Carr regarding the fact that Plaintiff questioned Michaels' DC and Loss Prevention teams about his concerns.  Later that day, Carr warned Plaintiff that he should not alienate the DC staff by asking tough questions and warned against putting "them on the defense".

12. On March 20, 2023, Steve Sanders, Manager of Loss Prevention asked Plaintiff to make an adjustment to the inventory ████████████████████████████████████ ███████████████████. Plaintiff told Carr that he disagreed with the requested write off and thought that it would ███████████████████████████, but Carr instructed him to make the adjustment.  On March 21, 2023, Plaintiff told the Loss Prevention team, including Hibbs

Plaintiff's Amended Complaint and Jury Demand – Page

and Carr, that in the future " 

13. On that same day, Hibbs complained to Carr regarding Plaintiff's attempts to enforce better inventory and accounting practices on his team. The next day, March 22, Carr warned Plaintiff again that he needed to work collaboratively with loss prevention. Plaintiff told Carr that he thought the loss prevention team needed to be a better partner by following best practices.

14. On April 5, 2023, Plaintiff met with Carr and Senior Vice President of Accounting and Chief Accounting Officer and Controller Jim Sullivan in Sullivan's office. Plaintiff reported the following concerns regarding Michaels' inventory and accounting practices:



15. Sullivan instructed Plaintiff to prepare a set of bullet points regarding the issues he was reporting. On April 12, 2023, Plaintiff reported to Carr and Sullivan, " ."

Plaintiff further reported to Carr, " ."

16. On April 13, 2023, Carr requested that Plaintiff schedule a meeting with her to further discuss

Plaintiff's Amended Complaint and Jury Demand – Page

his reports regarding the DC inventory gaps. This meeting was originally scheduled for April 19, 2023, but Carr rescheduled the meeting to April 20. During the meeting, Carr presented Plaintiff with a written disciplinary "coaching" alleging that Plaintiff had performance issues. Notably most of the performance issues identified related directly to Plaintiff's previous reports regarding inventory and accounting concerns and Michaels' failure to follow accounting and SOX best practices.

17. On April 22, Plaintiff complained via email to the Vice President of Human Resources, Joyce Davis ("Davis"), copying Sullivan. In his email, Complainant stated: My immediate manager, Sharon Carr, has created a hostile working environment, in retaliation for the financial discrepancies I brought to the attention of Jim Sullivan Chief Officer Accounting; ▇▇▇▇ ▇▇▇ issue on April 3rd. I have expressed my concerns to Sharon several times over the last 4 months and provided a PowerPoint presentation. Moreover, I expressed to Jim that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. From that moment, she has been attempting to intimidate me and inhibits my effective performance, through/with malicious intent. Thus, the PIP she developed is a direct adverse action to my whistleblowing of the missing ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and an attempt to ultimately terminate me."

18. Plaintiff further complained, "the working environment in which Sharon has created is antagonistic, and confrontational. I feel targeted, attacked and not as if I am a part of a team; I feel like an enemy. My role is to ensure the unit integrity of our merchandise, and accurately document shrink. Sometimes that means I have to make tough calls."

19. On April 25, 2023, Plaintiff met with Carr to discuss further details and what additional information they needed to investigate the concerns that Plaintiff reported. On May 1, 2023, Plaintiff met with Davis via TEAMS to discuss his complaint of retaliation.

Plaintiff's Amended Complaint and Jury Demand – Page

20. On May 3, 2023, Plaintiff provided Davis with an outline of the accounting and inventory concerns he had previously reported.  Stating, "██████████████████████████████████████████████████████████████████████ I see this as an opportunity to make Michaels better and grow. Although I've shared this information with Sharon, I haven't taken action on addressing the issues I see. Can I get 15-30 minutes with you before I schedule a meeting with Jim?"

21. On May 15, 2023, Plaintiff followed up with Davis on his request to schedule a meeting to discuss the concerns he reported, and she promised to schedule a meeting with Plaintiff and Sullivan. On May 19, 2023, Plaintiff met with Sullivan and Davis to further discuss his reported concerns.

22. On August 25, 2023, Davis terminated Plaintiff for alleged performance issues.  During that meeting, Davis provided no additional examples of performance issues since Plaintiff was provided the performance coaching on April 20, 2023.  Additionally, Plaintiff did not receive any additional coaching or discipline between April 20 and the date of his termination.

## IV. CAUSES OF ACTION

### COUNT 1 - 26 U.S.C. § 7623(d) Taxpayer First Act:

23. Whitaker incorporates paragraphs 6 through 22  as though fully set forth herein.

24. 26 U.S.C. § 7623(d) the Taxpayer First Act creates a private cause of action for employees who report or oppose federal tax fraud.

25. The statute states, in relevant part, that "[n]o employer… may discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee in the terms and conditions of employment . . . in reprisal for any lawful act done by the employee (A) to provide information, cause information to be provided, or otherwise assist in an investigation regarding

Plaintiff's Amended Complaint and Jury Demand – Page

underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of federal law relating to tax fraud, when the information or assistance is provided to … a person with supervisory authority over the employee, or any other person working for the employer who has the authority to investigate, discover, or terminate misconduct, . . ."

26. In order to establish such a claim, an employee must prove (1) that he engaged in protected activity, (2) his employer knew he engaged in that activity, (3) he suffered an unfavorable personnel action, and (4) the protected activity was a contributing factor in the unfavorable actions.

27. In this case, Whitaker can establish a claim of retaliation under the Taxpayer First Act. He engaged in protected activity when he repeatedly brought concerns about Michaels' accounting and inventory discrepancies to his supervisors and managers, as noted *supra*. These discrepancies created ███████████████████████████████████████████ ████████████████████████████████. This misalignment impacts ███████████████████████████████████████ ████████████████████. Since the cost of goods sold is subtracted from total revenue to calculate taxable income, ████████████████████████████████████████ ███████████████. Whitaker reported his concerns to the Director of Accounts Payable, Accounts Receivable and Physical Inventory Accounting and the Senior Vice President of Accounting and Chief Accounting Officer and Controller both of whom have sufficient accounting background to understand the effect that inflated inventory would have on taxable income.

28. There is no question that Michaels knew that this concern was voiced by Whitaker, since he

Plaintiff's Amended Complaint and Jury Demand – Page

brought this concern to the attention of many people including Carr, Wadsworth, Hibbs, Sullivan, and Davis.

29. Shortly following his reports regarding concerns about discrepancies in Michaels' inventory and accounting to Sullivan, Whitaker received a negative performance coaching which included complaints about Plaintiff's tone and failure to work collaboratively specifically related to his protected conduct. This inaccurate performance coaching occurred just seven days after Plaintiff received a Meets Expectations Performance Review and a raise. The pretextual nature of Defendant's coaching is further shown by the previous complaints of Wadsworth and Hibbs following Plaintiffs' attempts to warn their teams about potential inventory issues.

30. Whitaker was terminated four months after he complained to HR that he felt the performance coaching was retaliation for protected reports regarding financial discrepancies. The close timing between Plaintiff's protected activities and the performance coaching and termination is compelling evidence of retaliation.

31. As set forth *supra*, Plaintiff engaged in protected activity, including, the following:

  a. January 25, 2023, Plaintiff met with Carr to discuss concerns he had about the accuracy of Michaels' inventory and accounting practices and sent her a brief power point following the meeting outlining his concerns.

  b. On March 2, 2023, Plaintiff reported to Wadsworth and Carr that he had confirmed that ███████████████████████████████████████████ ██████████████████████████████.

  c. On March 21, 2023, Plaintiff warned the loss prevention team that "██████ ████████████████████████████████████████████████████ ██████████████████████████████."

Plaintiff's Amended Complaint and Jury Demand – Page

    d.  On April 5, 2023, Plaintiff met with Sullivan and Carr and reported discrepancies and failures in Michales' inventory accounting practices.

    e.  On April 12, 2023, Plaintiff reported to Carr and Sullivan, "███████ ████████████████████████████████████████████ ██████████." Plaintiff further reported to Carr, "████████ ████████████████████████████████████████████ ██████████████████████."

    f.  On April 22, 2023, Plaintiff reported to Davis, "My immediate manager, Sharon Carr, has created a hostile working environment, in retaliation for the financial discrepancies I brought to the attention of Jim Sullivan Chief Officer Accounting."

    g.  On May 3, 2023, Plaintiff provided Davis with an outline of the accounting and inventory concerns he had previously reported.

    h.  Plaintiff had additional meetings regarding his reported concerns with Carr on April 25 and with Sullivan and Davis on May 19.

32. After Whitaker engaged in protected conduct, Defendant took adverse actions against him, including the inaccurate performance coaching on April 20 and termination on August 25, 2023.

## V. REQUEST FOR RELIEF

33. Whitaker has no plain or adequate remedy at law to correct the wrongs complained of herein and has thus instituted this suit for damages. Further, Whitaker is now suffering and will continue to suffer irreparable injury from Defendant's policies, practices, and actions set forth herein.

34. Whitaker respectfully requests that this Court grant him "all relief necessary to make the [him]

Plaintiff's Amended Complaint and Jury Demand – Page

whole," including all damages, declaratory relief and injunctive relief provided for under 26 U.S.C. § 7623(d) Taxpayer First Act:

a. A declaratory judgment, declaring Defendant's past practices herein complained of to be unlawful.

b. Compensatory damages, including 200% of back pay, 100% of lost benefits, front pay, "make-whole" relief, special damages for emotional distress and loss of professional reputation,

c. attorney's fees and litigation costs, including expert witness fees.

d. Whitaker further requests prejudgment and post judgment interest.

e. Such other general relief to which Plaintiff shows himself justly entitled.

## VI.  JURY DEMAND

35. Plaintiff requests that all ultimate fact issues be submitted to a jury for determination. He has paid the jury fee.

Respectfully Submitted,

_____
Jane Legler
Texas Bar No. 03565820
Kyla Gail Cole
Texas Bar No. 24033113

Cole Legler PLLC
3300 Oak Lawn Ave., # 425
Dallas, Texas 75219
(214) 748-7777
(214) 748-7778 (facsimiles)
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com

Plaintiff's Amended Complaint and Jury Demand – Page

## Certificate of Service

I hereby certify that a true and correct copy of this document was served on Defendant's counsel of record via email on this April 17, 2024.

Karl G. Nelson, Esq.
Andrew LeGrand, Esq.
GIBSON, DUNN & CRUTCHER LLP
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Email: KNelson@gibsondunn.com
Email: ALeGrand@gibsondunn.com

_____
Kyla Gail Cole